Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4740 | **DATE** | 5/4/2001 |
| **CASE TITLE** | Scott vs. Briley | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons set forth on the attached order, the Court denies Bobbie Earl Scott's petition for a writ of habeas corpus. The Court directs the Clerk to enter judgment in favor of respondent. The Court, on its own motion, declines to issue a certificate of appealability, as we can find nothing to suggest that the merits of petitioner's claims are debatable, capable of different resolution, or deserving of further consideration. *See* 28 U.S.C. §2253(c)(2); *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983); *Porter v. Gramley*, 1212 F.3d 1308, 1312 (7th Cir. 1997).

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | MAY 0 7 2001 date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 20 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 01 MAY -4 PM 5:06 | MAY 0 7 2001 date mailed notice | |
| OR | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

BOBBY EARL SCOTT, )
)
        Petitioner, )
)
vs. ) Case No. 00 C 4740
)
KENNETH BRILEY, )
)
        Defendant. )

## MEMORANDUM OPINION AND ORDER

DOCKETED

MAY 07 2001

MATTHEW F. KENNELLY, District Judge:

Before the Court is Bobby Earl Scott's petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254, seeking to set aside his Illinois convictions for robbery and aggravated robbery. For the reasons set forth below, the Court denies the petition.

### Background

At around 1:00 p.m. on February 18, 1998, Phillip Buscher, the owner of the Circle Tap in Oakbrook Terrace, was outside the establishment putting up a sign when he saw a man and a woman walking toward him on Roosevelt Road. Mary Lou Parsons, who was working in a building on the same road as the Circle Tap, testified that she saw two black people walking down Roosevelt Road. Buscher testified that the man put an "arm lock" around Buscher's head, demanded his car keys and money, and showed him a silver object which Buscher thought was a gun. The woman then went through Buscher's pockets and removed a set of keys, money, and charge cards.

After a patron came out of the front door of the Circle Tap, Buscher ran inside, yelling for help. He retrieved a hand gun and went back outside. Buscher saw the man and woman running

down the street in the direction from which they had come, and he fired a shot over their heads. Parsons testified that she saw the two people she had seen earlier, jogging down the road. Buscher found his credit cards in the parking lot. When the man and woman reached the end of the road, the women turned to the right and the man turned to the left. Buscher got into his car with a man from the bar, drove down the road, and turned right. The man who had accompanied Buscher got out and went the other direction, chasing the other man on foot.

Officer Richard Winninger responded to a dispatch and proceeded to the intersection of Roosevelt Road and Villa Avenue, where he saw an African-American man being chased by a white man with a stick. Winninger ordered both men to stop. Buscher arrived in his car and identified the African-American man as the man who had tried to rob him. Winninger searched Scott but found no weapon, money, or keys, and he had not seen the man dispose of anything. Another officer then arrived with a woman whom Buscher identified as the other person who had robbed him. Buscher walked around the scene looking for his keys. He eventually found a pipe cutter with a piece of pipe attached to it, lying in a culvert. At trial there was no evidence of the recovery of any fingerprints from the pipe cutter.

When the African-American man was brought to the police station, he was identified as the petitioner, Bobby Earl Scott. After a jury trial, Scott was found guilty of robbery and aggravated robbery. He was sentenced to a fifteen year prison term on November 19, 1997.

On direct appeal, Scott raised four issues: (1) he was not proven guilty beyond a reasonable doubt; (2) the trial court erred in admitting the pipe cutter in evidence; (3) the trial court should have declared a mistrial when the prosecution destroyed and failed to produce notes from witness interviews; and (4) he was deprived of a fair trial by the prosecutor's reference in

closing argument to Scott's "criminal ways." The Illinois Appellate Court affirmed Scott's conviction on July 15, 1999, and the Illinois Supreme Court denied his petition for leave to appeal on December 1, 1999. Scott did not file a post-conviction petition.

## Analysis

In his habeas corpus petition, Scott raises three issues: (1) his due process rights were violated by the prosecution's withholding and destruction of notes of witness interviews; (2) the evidence at trial was insufficient to prove his guilt; and (3) his right to a fair trial was violated by the trial court's decision to admit the pipe cutter in evidence.

Before a federal court may review the merits of a petition for habeas corpus, the petitioner must: "(1) exhaust all remedies available in state courts; and (2) fairly present any claims in state court first, or risk procedural default." *Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir. 1996). Exhaustion is not an issue in this case; Scott unsuccessfully pursued a direct appeal of his conviction, and he has no further avenue of relief in state court. Procedural default, however, is an issue with respect to two of Scott's three claims.

Procedural default occurs when the petitioner fails to present a claim to the state courts at the time, and in the way, required by the state. *See United States ex rel. Gallo v. Gilmore*, No. 98 C 2484, 2000 WL 347923, at *6 (N.D. Ill. Mar. 31, 2000) (citing *Hogan v. McBride*, 74 F.3d 144, 146 (7th Cir. 1996)); *see also Verdin v. O'Leary*, 972 F.2d 1467, 1472-73 (7th Cir. 1992). The substance of a federal habeas corpus claim must first be presented to the state courts. *Picard v. O'Connor*, 404 U.S. 270, 278 (1971). To satisfy this requirement, the petitioner must present to the state judiciary both the operative factors and the legal principles that control his federal claim; otherwise, he forfeits federal review of the claim. *Rodriguez v. Scillia*, 193 F.3d 913, 917

3

(7th Cir. 1999); *Bocian,* 101 F.3d at 469.

Four factors guide this court's analysis of whether Scott fairly presented his claims in state court: (1) whether he relied on federal cases that apply constitutional analysis; (2) whether he relied on state cases that apply a federal constitutional analysis to similar facts; (3) whether he framed the claim in terms so particular as to call to mind a specific federal constitutional right; and (4) whether he alleged a pattern of facts that is well within the mainstream of constitutional litigation. *Wilson v. Briley,* 243 F.3d 325, 327 (7th Cir. 2001) (citing *Verdin,* 972 F.2d at 1473-74). The presence "of any of these factors, particularly (1) and (2), does not automatically avoid a waiver." *Verdin,* 972 F.2d at 1474.

Respondent argues that Scott failed to fairly present his sufficiency of the evidence claim to the state courts. The Court disagrees. Though Scott did not cite any federal cases in his state appeal brief, his claim was made in a way sufficient to call to mind the federal constitutional standard – which is the same as the Illinois standard. We therefore address that claim on the merits.

The Illinois Appellate Court held that there was evidence sufficient to prove Scott's guilt beyond a reasonable doubt. The Court agrees. Buscher testified that he saw Scott three times: as Scott was walking down Roosevelt Road; immediately before he grabbed Buscher from behind; and when Scott turned around as he was running away from the Circle Tap. Buscher identified Scott immediately after the incident.

Under Illinois law, the testimony of a single witness is sufficient to prove guilt if the witness is credible and observed the defendant under conditions permitting identification. *E.g., People v. Kennard,* 204 Ill. App. 3d 641, 648, 561 N.E.2d 1188, 1192 (1990). Viewed in the

light most favorable to the prosecution, Buscher's testimony has indicia of reliability sufficient to sustain Scott's conviction: he saw his assailant's face three times at close range in daylight and identified Scott as the assailant immediately after the incident. Buscher's credibility was determined by a jury, and this Court will not disturb that decision. *See, e.g., United States v. Fiore,* 178 F.3d 917, 924 (7th Cir. 1999). The evidence was sufficient to prove Scott's guilt beyond a reasonable doubt.

The Court concludes that Scott's other two claims have been procedurally defaulted because he did not fairly present the substance of those claims to the state courts. In his brief to the Illinois Appellate Court, Scott cited no federal cases in support of either argument. Rather, he relied exclusively on Illinois cases, none of which employed a federal constitutional analysis. This tends to undercut any claim that the state court should have understood that Scott was invoking federal constitutional rights. *See Picard,* 404 U.S. at 276-78; *Verdin,* 972 F.2d at 1475-76. Nor did Scott did not frame these claims in terms that called to mind the constitutional rights upon which he now relies. Rather, he framed them exclusively in terms of state law principles: violation of Illinois Supreme Court Rule 412 with respect to the witness interview notes, and violation of Illinois common law evidence principles with regard to the admission of the pipe cutter.

Finally, the facts Scott cited in support of his claim did not have such a clear connection to federal constitutional principles that the state court should have been alerted to a federal basis for the claims. While a petitioner is not required to cite "book and verse of the federal constitution," he must provide the state court an opportunity to "adjudicate squarely the federal issue." *Id.* at 1474. Scott's admission-of-evidence claim is not one that inherently suggests the

violation of a federal constitutional right. And his claim about the witness interview notes focused entirely on the prosecution's state-law obligations under Illinois Supreme Court Rule 412. Though the Appellate Court cited *Brady v. Maryland,* 373 U.S. 83 (1963), a federal due process case, in discussing the latter claim, it did so only by way of comparison with Illinois Supreme Court Rule 412, the sole basis for Scott's argument on appeal. Apart from this passing citation, the court quite understandably addressed the issue just as Scott raised it – as one of state law. This is not enough to constitute fair presentment; merely raising a somewhat related state-law claim in state court is not enough to allow that court the opportunity to address the federal constitutional issue. In sum, Scott's claims were procedurally defaulted.

A procedural default can be overlooked if the petitioner demonstrates cause for the default and subsequent prejudice, or when he shows that a fundamental miscarriage of justice will occur unless the federal court hears his claim. *See Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also, e.g., Anderson v. Cowan,* 227 F.3d 893, 899-900 (7th Cir. 2000). Scott has not attempted to make either type of showing. The Court is therefore precluded from addressing the merits of his claims concerning the witness interview notes and the pipe cutter.

### Conclusion

For the foregoing reasons, the Court denies Bobbie Earl Scott's petition for a writ of habeas corpus. The Court directs the Clerk to enter judgment in favor of respondent.

                                                              MATTHEW F. KENNELLY

Date: May 4, 2001                                                United States District Judge